# In the United States Court of Federal Claims

No. 14-1051L

(Filed: May 20, 2015)

| | | |
|---|---|---|
| **MESA GRANDE BAND OF MISSION INDIANS,** | ) ) ) | Claim by an Indian band of a taking arising from interference with its right to an 80-acre tract of land; objective basis for awareness of accrual of claim; 28 U.S.C. § 2501; plausible allegations of entitlement to relief; RCFC 12(b)(6); joinder; RCFC 19 |
| **Plaintiff,** | ) ) ) ) | |
| **v.** | ) ) | |
| **UNITED STATES,** | ) ) | |
| **Defendant**. | ) ) | |

Derril B. Jordan, Washington, D.C., for plaintiff. With him on the briefs and at the hearing was Michael D. Sliger, Clawson, Michigan. Of counsel was Don B. Miller, Boulder, Colorado.

Kristofor R. Swanson, Senior Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant. With Mr. Swanson on the briefs were John C. Cruden, Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., and Bethany Sullivan, Division of Indian Affairs, Office of the Solicitor, United States Department of the Interior, San Francisco, California. At the hearing was Jennifer Turner, Division of Indian Affairs, Office of the Solicitor, United States Department of the Interior, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

This case concerns property located in the mountains of northeastern San Diego County, California, and turns on events dating back to 1875. The property at issue is an 80-acre tract (the "1926 Tract") that has had a small spring providing a source of water in an arid area. *See* Pl.'s Mem. in Opp'n to the United States' Mot. to Dismiss for Lack of Jurisdiction ("Pl.'s Opp'n") at 1, ECF No. 10. Tracing title back to a congressional enactment in 1926, the Act of May 10, 1926, Pub. L. No. 69-209, 44 Stat. 496 (1926) ("1926 Act"), plaintiff, the Mesa Grande Band of Mission Indians ("Mesa Grande Band"), claims entitlement to ownership of the subject property. On July 30, 1980, however, a patent for the 1926 Tract was issued by the Department of the Interior to the United States in trust for the Santa Ysabel Band of Mission Indians ("Santa Ysabel Band"), a neighboring band. The Mesa Grande Band did not contemporaneously receive notice of the patent's issuance.

On October 28, 2014, the Mesa Grande Band filed suit in this court alleging that the grant of the patent by the Department of the Interior interfered with its property rights and effected a taking in contravention of the Fifth Amendment. *See* Compl. at 1. Alternatively, the Band avers that the award of the patent to the Santa Ysabel Band breached of the government's fiduciary duty to hold the land in trust for plaintiff's exclusive use and possession. *See* Compl. at 1. The government has moved to dismiss on three grounds: (1) lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"); (2) failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6); and (3) failure to join a necessary party under RCFC 12(b)(7) and RCFC 19. *See* United States' Mot. to Dismiss for Lack of Jurisdiction and Mem. in Support Thereof ("Def.'s Mot."), ECF No. 7.

## BACKGROUND[1]

The dispute involves several parcels of land located in the mountains northeast of San Diego, California. The parcels serve as the reservations of two distinct bands of Indians: the Mesa Grande Band of Mission Indians and the Iipay Nation of Santa Ysabel, formerly known as the Santa Ysabel Band of Diegueño Mission Indians. *See* Def.'s Mot. at 2 (citing Department of the Interior, *Indian Entities Recognized & Eligible to Receive Servs. From the U.S. Bureau of Indian Affairs*, 79 Fed. Reg. 4,748-02, 4,750 (Jan 29, 2014)). Both bands are federally-recognized. *See id.* at 1-2; *see also* Compl. ¶ 3. Disagreements concerning the beneficial ownership of these tracts arose decades ago. One collection of parcels (the "1893 Tracts") was the subject of a prior suit between plaintiff and the Secretary of the Department of the Interior in the Southern District of California. *See Mesa Grande Band of Mission Indians v. Salazar*, 657 F. Supp. 2d 1169 (S.D. Cal. 2009).[2] The remaining parcel, the 1926 Tract, is the subject of the present suit.

### A. *The 1983 Tracts*

On December 27, 1875, President Ulysses S. Grant issued an executive order setting aside three tracts of land encompassing approximately 15,000 acres for the "Santa Ysabel – including Mesa Grande." *See* Compl. ¶ 5; *see also* Def.'s Mot. Ex. 1 (Exec. Order of Dec. 27, 1875, *available in* Charles Joseph Kappler, *Indian Affairs: Laws & Treaties*, vol. 1, at 820-21 (2d ed. 1904)). Eight years later, on June 19, 1883, President Chester A. Arthur issued another executive order withdrawing an additional 120-acre local tract for "the permanent use and occupation of the Mission Indians in the State of California," specifically for a Mesa Grande family of three people. Def.'s Mot. Ex. 2 (Exec. Order of June 19, 1883, *available in* Charles Joseph Kappler, *Indian Affairs: Laws & Treaties*, vol. 1, at 823). In 1891, Congress passed "An act for the relief of the Mission Indians in the State of California," Act of Jan. 12, 1891, 26 Stat. 712, creating a three-person commission to select "a reservation for each band or village of the Mission Indians residing within [the State of California], which reservation shall include, as far

---

[1]The recitation of background information does not constitute findings of fact and is provided solely to establish a context for deciding the pending motions.

[2]The 1893 Tracts are also the subject of requests for adjustment and correction by the Mesa Grande Band currently pending before the Bureau of Indian Affairs. *See* Compl. ¶ 3.

as practicable, the lands and villages which have been in the actual occupation and possession of said Indians," *id.* § 2.  Selections by the commission (known as the "Smiley Commission") became valid when approved by the Secretary of the Interior and the President, after which the Secretary was authorized to issue land patents for each reservation.  *Id.* §§ 2-3; *see also* Def.'s Mot. at 2-3.  Patented land was to be held in trust by the United States for the "use and benefit of the band or village to which it [was] issued[.]"  26 Stat. 712, § 3.

The Smiley Commission subsequently investigated the lands and prepared a report to the Secretary of the Interior containing its recommendations for land set-asides.  The report recommended that the three tracts addressed by the Executive Order in 1875 be set aside for the Santa Ysabel Band ("Santa Ysabel Tracts 1, 2, and 3"), and the 120-acre tract set aside by the Executive Order in 1883 be patented to the Mesa Grande Band ("Mesa Grande Tract").  On December 29, 1891, President Benjamin Harrison approved the report by executive order, and patents conforming to the recommendation were issued on February 10, 1893.  *See* Compl. ¶ 8; *see also* Def.'s Mot. Ex. 4 (*Decision of the Asst. Sec'y of the Interior for Indian Affairs in the Matter of Beneficial Ownership Between the Mesa Grande and Santa Ysabel Bands of Mission Indians of Certain Reservation Lands* (Mar. 9, 1978) at 2-3).  Nonetheless, members of the Mesa Grande Band lived on Santa Ysabel Tracts 1 and 2, and those tracts came to be identified as the Mesa Grande Reservation.  *See* Def.'s Mot. Ex. 10 (Letter from Frank L. Haggerty, Jr., Acting Area Field Representative, to Area Realty Officer (Mar. 10, 1971)) ("[F]rom the days of the establishment of the Santa Ysabel Reservation, the Mesa Grande Band has used Santa Ysabel Tracts 1 and 2, and the Santa Ysabel Band has used Santa Ysabel Tract No. 3 based on custom and tradition."); *see also id.* ("[T]he Indians of the Mesa Grande Reservation, 'known also as Santa Ysabel Reservation Number 1,' have always been members of the Mesa Grande Band.").

## B.  *The 1926 Tract*

The 1926 Tract is an 80-acre parcel that contains a spring and adjoins the eastern boundary of one of the 1893 Tracts patented to the Santa Ysabel Band ("Santa Ysabel Tract 1") and consists of "the west half of the Southwest quarter of Section 11, Township 12 South, Range 2 East of the San Bernardino Meridian."  Compl. ¶ 10; *see also* Hr'g Tr. 10:15-25 (Apr. 20, 2015) (clarifying that "Santa Ysabel Tract 1 actually lies between the Mesa Grande patented reservation and the 80-acre disputed tract"), 29:20-22 ("[Santa Ysabel] Tract 1 is the L-shaped tract, and the 80 acres [of the 1926 Tract] is in the right angle of the L.");  *see generally* Pl.'s Opp'n Ex. 9 at 5 (Map, Mission Indian Reservations (1938)).[3]  The land was described in the 1920s as being "rough, rocky, and in a canyon."  Compl. ¶ 38.  It is "remotely located, isolated, [and] not accessible by any roadway, and may be accessed from [Santa Ysabel Tract 1] only by foot over extremely rough terrain."  Compl. ¶ 40.

On June 1, 1925, Charles L. Ellis, Superintendent of the Bureau of Indian Affairs' Mission Agency, requested that the Commission of Indian Affairs set aside the parcel "for the use of the Mesa Grand[e] Indians," observing that the land contained a spring "which furnishes

---

[3]Citations to the transcript of the hearing held on April 20, 2015 are to "Hr'g Tr." and subsequent references will omit the date.

water to stock on the M[e]sa Grand[e] Indian [R]eservation," but "[i]t has been reported that a white man is threatening to fence it up," and noting that members of the Mesa Grande Band "have used it for years and consider it theirs, but there is no record that it has ever been reserved for their use."  *See* Pl.'s Opp'n Ex. 1 (Letter from Ellis to Commissioner (June 1, 1925)). Subsequently, on August 25, 1925, the Secretary of the Interior wrote to President Calvin Coolidge requesting that the tract be temporarily withdrawn "for the Mesa Grande Band or Village of Indians until legislation could be enacted."  *See* Pl.'s Opp'n Ex. 12, at 4 (Mem. from Leonard Ware to the Chief, Branch of Tribal Programs (May 3, 1960)); *see also* Compl. ¶ 12. Two days later, on August 27, 1925, President Coolidge signed Executive Order No. 4297 temporarily reserving the tract "for the use and benefit of the Indians of the Mesa Grande Reservation" until March 5, 1927.  Def.'s Mot. Ex. 5 (Exec. Order of Aug. 27, 1925, *available in* Charles Joseph Kappler, *Indian Affairs: Laws & Treaties*, vol. 4, at 1016 (1929)); *see also* Compl. ¶ 13.  The temporary withdrawal did "not affect any existing legal right of any person to any of the land described [t]herein."  *Id.*

Confusion arose following the temporary withdrawal prompted by the fact that the "Mesa Grande Indian Reservation" was the local name for Santa Ysabel Tract 1, which adjoins the 1926 Tract.  Def.'s Mot. at 4; *see also* Compl. ¶¶ 15-16.  On December 14, 1925, Charles J. Burke, the Commissioner of Indian Affairs, requested by letter that Superintendent Ellis clarify the relationship between the 1926 Tract and the 120-acre Mesa Grande reservation.  Pl.'s Opp'n Ex. 4 (Letter from Burke to Ellis (Dec. 14, 1925)).  Superintendent Ellis responded by letter on December 19, 1925, explaining that "Santa Ysabel [Tract] 1 is known locally as the Mesa Grande Reservation, and the Indians shown on the Census as Mesa Grande Indians are, in the main, occupants of this [T]ract."  Pl.'s Opp'n Ex. 5 (Letter from Ellis to Burke (Dec. 19, 1925)).  On January 15, 1926, the Secretary of the Interior sent to the chairmen of the House and Senate Committees on Indian Affairs a draft bill providing for the "permanent withdrawal of the 80 acres for use of the 'Indians of the Mesa Grande Reservation.'"  Compl. ¶ 16.  The letter noted that the 80 acres "adjoins land patented in trust in 1893 to that band of Indians."  Compl. ¶ 16. Congress then passed legislation permanently reserving the 80-acre tract.  Act of May 10, 1926, Pub. L. No. 69-209, 44 Stat. 496.  The 1926 Act provided:

> That there is hereby withdrawn from settlement, entry, or disposition under the laws of the United States and set apart and reserved *for the occupancy and use of the Indians of the Mesa Grande Reservation, known also as Santa Ysabel Reservation Numbered 1*, a tract of land in the State of California, particularly described as the west half of the southwest quarter of section 11, township 12 south, range 2 east of San Bernardino meridian, containing eighty acres, the same *to be added to and become a part of said Indian reservation*.

*Id.* (emphasis added).  On June 8, 1926, the Assistant Commissioner of Indian Affairs sent copies of the 1926 Act to the Commissioner of the General Land Office and the Superintendent of the Mission Indian Agency and requested that both officials make necessary notations reflecting the law "upon the records of [their offices]."  Compl. ¶ 21.  However, no patent was then issued by the General Land Office for the 1926 parcel.  Compl. ¶ 22.

C.   *Administrative Proceedings Regarding Santa Ysabel Tracts 1 and 2*

In the 1960s, the Mesa Grande Band discovered, seemingly for the first time, that it did not hold beneficial interest in Santa Ysabel Tracts 1 and 2, after it was denied funds to improve tribal housing by the Department of Housing and Urban Development on that basis.  *See* Compl. ¶ 24; *see also* Def.'s Mot. at 4.  In the early 1970s, the Mesa Grande Band accordingly asked the Department of the Interior to investigate and correct patents issued to Mesa Grande and Santa Ysabel pursuant to the Mission Indian Relief Act and to reissue patents for Santa Ysabel Tracts 1 and 2 to identify the Mesa Grande Band as the beneficial interest holder.  See Compl. ¶ 24.  Proceedings ensued before an administrative law judge in the Department of the Interior's Office of Hearings and Appeals, during which the Mesa Grande Band was represented by counsel, culminating in a recommendation in 1976 by the administrative law judge that the Assistant Secretary deny the Mesa Grande Band's request.  Def.'s Mot. Ex. 7 (*In the Matter of the Dispute Between the Mesa Grande & Santa Ysabel Bands of Mission Indians Concerning the Ownership of Certain Reservation Lands in Ca.* (Feb. 6, 1976)), Pl.'s Opp'n Ex. 23 (same); *see also* Def.'s Mot. Ex. 9 (Tr. of Proceedings (Oct. 21, 1974)).  The Mesa Grande Band submitted legal briefs opposing the administrative law judge's recommendation, to which the Santa Ysabel Band responded.  *See* Def.'s Mot. at 5 (citing Def.'s Mot. Ex. 7, at 5).  Ultimately, on March 9, 1978, the Assistant Secretary adopted the administrative law judge's recommendation and denied the Mesa Grande Band's request, reasoning that the Department did not have jurisdiction to correct the patents and observing that the Smiley Commission in patenting the parcels to the Santa Ysabel Band had probably concluded that the "historical separation of the two bands . . . may have been lost through intermixture of the members of the two groups."  Pl.'s Opp'n Ex. 16 (*Decision of the Asst. Sec'y of the Interior for Indian Affairs in the Matter of Beneficial Ownership Between Mesa Grande and Santa Ysabel Bands of Mission Indians of Certain Reservation Lands* (Mar. 9, 1978) at 4).

D.   *The Department of the Interior's Issuance of a Patent for the 1926 Tract*

Thereafter, the Department of the Interior turned to the 1926 Parcel.  Compl. ¶ 30.  On February 26, 1980, the Acting Superintendent, Bureau of Indian Affairs' Southern California Agency requested that the Bureau of Indian Affairs' Sacramento Area Director issue a trust patent to the Santa Ysabel Band for the 1926 Parcel, reasoning that "[a]lthough the [1925] Executive Order cites the land for the use and benefit of the Indians of the Mesa Grande Reservation," because the Santa Ysabel Band was the beneficial interest holder of Santa Ysabel Tract 1, the Department of the Interior should name the latter band as the beneficial interest holder for the 1926 Parcel as well.  Compl. ¶ 30 (alteration in original).  On July 30, 1980, the Department of the Interior adopted the Acting Superintendent's recommendation and issued Trust Patent No. 04-80-0023 for the 1926 Parcel to Santa Ysabel.  Pl.'s Opp'n Ex. 18.

The patent for the 1926 Parcel was sent to the Santa Ysabel Band on August 22, 1980.  *See* Pl.'s Opp'n Ex. 19 (Letter from Jerome F. Tomhave, Superintendent, to Ignacio "Ben" Scerato, Spokesman, Santa Ysabel Band (Aug. 22, 1980)).  No notice of the patent was issued to the Mesa Grande Band or publicly posted.  Compl. ¶¶ 33, 36.  The Mesa Grande Band allegedly did not discover that the 1926 Tract had been patented to the Santa Ysabel Band until November

12, 2010, when it received a response to a request made under the Freedom of Information Act ("FOIA") for documents regarding its claim to Santa Ysabel Tracts 1 and 2. Compl. ¶ 35.  At no time following the issuance of the 1980 patent did the Bureau of Indian Affairs or the Santa Ysabel Band attempt to exclude members of the Mesa Grande Band from the property.  Compl. ¶ 37.  Currently, members of the Mesa Grande Band are not raising livestock, and neither they nor anyone else appear to use the tract.  Compl. ¶ 39; *see also* Hr'g Tr. 15:20-25.

## PROCEDURAL HISTORY

The Mesa Grande Band filed a complaint in this court on October 28, 2014, seeking compensation for the taking of the subject property, Compl. ¶¶ 44-48, or, alternatively, for breach of trust, maintaining that the conveyance of the 1926 Tract to the Santa Ysabel Band violated the government's "duty as [p]laintiff's trustee to hold and protect the subject land for [p]laintiff's exclusive use and benefit."  Compl. ¶ 50.  In terms of relief, the Mesa Grande Band requests an award of "[t]he full fair-market value of the subject land, in an amount to be determined, on the date it was taken by [the government], together with pre-judgment interest" in addition to attorneys' fees, expert witness fees, costs, and "[s]uch other and further relief as this [c]ourt may deem just and proper."  Compl. at 10.  On January 20, 2015, the government filed its motion to dismiss.  *See* Def.'s Mot. After briefing, a hearing on the pending motion was held on April 20, 2015.

## STANDARDS FOR DECISION

### A.  *Jurisdictional Time-Bar*

Before addressing the merits, a "court must satisfy itself that it has jurisdiction to hear and decide a case."  *Hardie v. United States*, 367 F.3d 1288, 1290 (Fed. Cir. 2004) (quoting *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1241 (Fed. Cir. 2002) (in turn citing *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 115 F.3d 962, 963 (Fed. Cir. 1997))).  In making its assessment of jurisdiction, the court will ordinarily "consider the facts alleged in the complaint to be true and correct."  *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Air Prod. & Chems., Inc. v. Reichhold Chems., Inc.*, 755 F.2d 1559, 1562 n.4 (Fed. Cir. 1985)).  However, when a motion filed under RCFC 12(b)(1) challenges the court's subject matter jurisdiction, the burden of establishing jurisdiction is placed upon the party seeking to invoke it, *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936), and this burden must be proven by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citing *Zunamon v. Brown*, 418 F.2d 883, 886 (8th Cir. 1969) (in turn quoting *McNutt*, 298 U.S. at 189)).

The Mesa Grande Band premises this court's jurisdiction on the Tucker Act and the Indian Tucker Act, 28 U.S.C. §§ 1491(a)(1), 1505.  The Tucker Act grants this court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Indian Tucker Act bestows jurisdiction on this court over claims by "any tribe, band, or other identifiable group of American

Indians residing within the territorial limits of the United States or Alaska whenever such claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band[,] or group."   28 U.S.C. § 1505.

Actions brought under the Tucker Act and the Indian Tucker Act are time-barred unless the claim "is filed within six years after such claim first accrues." 28 U.S.C. § 2501. The time-bar specified in Section 2501 is jurisdictional, *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008), and a plaintiff has the burden to prove by a preponderance of the evidence that the complaint was timely filed, *cf. Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315, 1320-22 (Fed. Cir. 2014) (ruling by contrast that the statute of limitations set out in the Contract Disputes Act, 41 U.S.C. § 7103, is not jurisdictional, placing that statute of limitations in the realm of those subject to RCFC 8(c) (listing "statute of limitations" among affirmative defenses)). Therefore, a plaintiff's failure to meet the requirements of 28 U.S.C. § 2501 precludes the court from having juridical power to hear his or her claim. *See McDonald v. United States*, 37 Fed. Cl. 110, 113 (1997), *aff'd*, 135 F.3d 778 (Fed. Cir. 1998); *see also Catellus Dev. Corp. v. United States*, 31 Fed. Cl. 399, 404 (1994) (citing *Soriano v. United States*, 352 U.S. 270, 273 (1957)).

In general, a cause of action accrues "when all the events which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988) (alteration in original); *see also Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009); *Katzin v. United United States*, 120 Fed. Cl. 199, 209 (2015). The court applies an objective standard in determining the date of accrual. *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995). Therefore, the "plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." *Id.* (citing *Menominee Tribe of Indians v. United States*, 726 F.2d 718, 721 (Fed. Cir. 1984)); *see also Higgins v. United States*, 589 Fed. Appx. 977, 980 (Fed. Cir. 2014).[4]

### B.  *RCFC 12(b)(6)*

Dismissal is appropriate under Rule 12(b)(6) if the "facts asserted by the claimant do not under the law entitle him to a remedy." *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998). To survive a motion to dismiss for failure to state a claim, the complaint must "contain

---

[4]An exception, the "accrual suspension" rule, allows "the accrual of a claim against the United States [to be] suspended, for purposes of 28 U.S.C. § 2501[] . . . [if] the plaintiff [can] either show that the defendant has concealed its acts" such that plaintiff was unaware of their existence or "that its injury was inherently unknowable at the accrual date." *Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008) (internal quotation marks and citations omitted). The accrual suspension rule is "strictly and narrowly applied," *Rosales v. United States*, 89 Fed. Cl. 565, 578 (2009), (citing *Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003)), and absent knowing concealment by the defendant, accrual suspension requires "what is tantamount to sheer impossibility of notice,'" *id.* (citing *Japanese War Notes Claimants Ass'n v. United States*, 373 F.2d 356, 359 (Ct. Cl. 1967)).

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), meaning that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Additionally, the facts alleged must "'plausibly suggest[] (not merely [be] consistent with)' a showing of entitlement to relief." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). Although the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 545, it must present more than "'naked assertion[s], devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (alteration in original), or "the-defendant-unlawfully-harmed-me-accusation[s]," *id.* (citing *Twombly*, 550 U.S. at 555). In determining whether the plaintiff has pled adequate facts to allow the court to infer that his or her entitlement to relief is plausible—not merely possible—the court must "draw on its judicial experience and common sense," *id.* at 679, and "must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff," *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).

## C. *RCFC 19*

RCFC 19 requires the court to complete a two-step analysis in determining whether to dismiss a claim for failure to join an indispensable party. *See United Keetoowah Band of Cherokee Indians of Okla. v. United States*, 480 F.3d 1318, 1324 (Fed. Cir. 2007). First, "the court must determine whether the absent party is 'necessary.'" *Id.* A party is necessary and must be joined if either "in that person's absence, the court cannot accord complete relief among existing parties" or "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . impair or impede the person's ability to protect the interest." RCFC 19(a)(1). Second, if an absent party is necessary but joinder is not feasible, the court must consider several factors to determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." RCFC 19(b); *see also United Keetoowah Band*, 480 F.3d at 1324.[5]

---

[5]The relevant factors include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

    (A) protective provisions in the judgment;
    (B) shaping the relief; or
    (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

Federally-recognized Indian tribes and bands are shielded by "'[t]he doctrine of tribal immunity, which recognizes the sovereignty of Indian tribes and seeks to preserve their autonomy [and] protects tribes from suits in federal and state courts.'" *Klamath Tribe Claims Comm. v. United States*, 97 Fed. Cl. 203, 213 n.17 (2011) (quoting *Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 771 (D.C. Cir. 1986)).  Moreover, in cases where a sovereign party should be joined in an action, but cannot be added due to sovereign immunity, "the entire case must be dismissed if there is the potential for the interests of the sovereign to be injured," even if no alternative forum exists in which the plaintiff can bring its claims.  *Klamath Tribe Claims Comm. v. United States*, 106 Fed. Cl. 87, 96 (2012), *aff'd*, 541 Fed. Appx. 974 (Fed. Cir. 2013).

# ANALYSIS

## A. *Jurisdiction*

The government first asserts that the Mesa Grande Band's complaint is jurisdictionally time-barred because the Band's claims accrued "no later than April 1978[,] when [the Department of the Interior's] Assistant Secretary for Indian Affairs informed the Band that the trust patent for Santa Ysabel Tract One would remain in the name of Santa Ysabel."  United States' Reply in Support of Motion to Dismiss ("Def.'s Reply") at 7, ECF No. 11; *see also* Def.'s Mot. at 8; Hr'g Tr. 13:8-20.  While the government recognizes that the Mesa Grande Band claims that it lacked actual knowledge of the issuance in 1980 of the patent for the 1926 Tract to the Santa Ysabel Band, it insists that nonetheless the Mesa Grande Band was on inquiry notice that it had a possible claim respecting the 1926 Tract as of 1978.  Def.'s Mot. at 8-12.  Specifically, the government avers that because "the language of the 1926 statute clearly states that beneficial ownership of the 1926 [Tract] is directly linked to that of Santa Ysabel Tract [1]," the Assistant Secretary's letter sent in April 1978 advising the Mesa Grande Band about the status of the trust patent for Santa Ysabel Tract 1 provided the Band "with all the information necessary to bring its present claim, or, at minimum, to inquire into the status of the 1926 [Tract]."  *Id*. at 10.  In the government's view, given the statutory link between the two parcels, once the Mesa Grande Band had knowledge that the administrative law judge concluded that Santa Ysabel Tract 1 should continue to be patented to the Santa Ysabel Band, it "was put on notice that its assumption about the beneficiary of the 1926 [Tract] could also be incorrect," and it therefore should have inquired into the status of the parcel.  *Id*. at 11; *see also* Def.'s Reply at 7.  Because the Mesa Grande Band failed then to inquire and did not file their complaint until 2014, more than thirty years after April 1984, the time when the six-year statute of limitations period would have lapsed following the purported accrual in April 1978, the government seeks dismissal on jurisdictional grounds.  Def.'s Mot. at 12.

In contrast, the Mesa Grande Band avers that the proper date of accrual is November 2010, when it learned as a result of its FOIA request that the 1926 Tract was patented to the

---

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

RCFC 19(b).

Santa Ysabel Band. Pl.'s Opp'n at 7; *see also* Hr'g Tr. 45:18 to 46:2 (noting that the Mesa Grande Band received actual notice of the 1980 patent in November 2010). Reasoning that the 1926 Act by its terms was "self-executing" and immediately created recognized Indian title, *i.e.*, a Fifth Amendment-protected property right, the Band emphasizes that "any subsequent issuance of a patent reflecting [the Mesa Grande Band's] beneficial title would have been a mere ministerial act undertaken for internal departmental purposes." Pl.'s Opp'n at 9. Accordingly, the Mesa Grande Band maintains that the 1978 decision regarding the tracts patented in 1893 did not influence in any way the Mesa Grande Band's property rights with respect to the 1926 Tract. *Id.* at 11. Because no notice was provided to the Mesa Grande Band when the government issued a trust patent to the 1926 Tract to the Santa Ysabel Band in 1980, the Mesa Grande Band avers that its claims with respect to that parcel did not accrue until 2010, less than six years prior to the filing of its complaint in 2014. *Id.* at 11-12.[6]

Applying an objective standard, the court concludes that events triggering the accrual of the Mesa Grande Band's claims did not occur until 2010. First, the nature and location of the 1926 Tract strongly indicate that the Mesa Grande Band had no reason to inquire into its status in 1980, the year when the government issued a patent to the Santa Ysabel Band. The 1926 Tract is remote and accessible only by foot over "extremely rough terrain." Pl.'s Opp'n at 15. Moreover, unlike the 1893 Tracts, there is no record of any Mesa Grande member or anyone else living on the land. *Id.* Although the land was originally reserved because it contained a spring that was used to provide water to animals on the Mesa Grande Reservation, by 1980 members of the Mesa Grande Band had ceased raising livestock and had no reason to visit it. *Id.* at 14; *see also* Hr'g Tr. 34:13-16 ("There's no road there, there's no activity there, no one knows the last time a human being set foot on that land. No one has been there for decades, to say the least."). Finally, as the plaintiff points out, "even if [members of the Mesa Grande Band] were visiting the tract regularly, there would almost certainly have been nothing to alert them that a patent had been issued to [the Santa Ysabel Band]," given that there is no evidence that the Bureau of Indian Affairs or the Santa Ysabel Band ever posted a notice on the land or otherwise attempted in any way to exclude the Mesa Grande people from the parcel. Pl.'s Opp'n at 14; *see also* Hr'g Tr. 58:24 to 59:8.

---

[6]The Mesa Grande Band goes one step further to invoke the accrual-suspension rule, arguing that Bureau of Indian Affairs' act of patenting the 1926 Tract to the Santa Ysabel Band was "inherently unknowable" because there was nothing at that time to alert the Mesa Grande Band of the change. Pl.'s Opp'n at 12 (citing *Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 61-62 (2009)). The Mesa Grand Band further asserts that "[a]ccrual of the claim should . . . be suspended because [the Bureau of Indian Affairs'] failure to provide notice qualifies as concealment" which may have been "active and deliberate," preventing the Band from knowing it had a claim against the [g]overnment. *Id.* at 13-14 (citing *Ingrum*, 560 F.3d at 1315); *see also* Hr'g Tr. 52:18 to 53:19 (noting that the area director who caused the patent to the 1926 Tract to be issued in 1980 knew that the Mesa Grande Band claimed the tract from proceedings leading up to the 1978 decision by the Bureau of Indian Affairs). Because the court can resolve the statute-of-limitations issue through application of an objective standard regarding notice, *see* discussion, *infra*, it need not address the accrual-suspension rule.

Additionally, in 1978, it was not the case that "all the events which fix[ed] the government's alleged liability [had] occurred," *Hopland Band of Pomo Indians*, 855 F.2d at 1577, because the land had not then been patented to the Santa Ysabel Band, *see* Hr'g Tr. 17:4-12. Even if the Mesa Grande Band had inquired into the status of the 1926 Tract in 1978, when the government argues that it was put on inquiry notice, it would have found no change in the land's status since the promulgation of the 1926 Act.

Finally, contrary to the government's contentions, there was nothing in the administrative proceedings in the late 1970s that would have caused the Mesa Grande Band to realize that it would lose its rights to the 1926 Tract. Those proceedings were entirely focused on the 1893 Tracts, and specifically on Santa Ysabel Tracts 1 and 2. *See supra*, at 5; *see also Mesa Grande Band*, 657 F. Supp. 2d 1169 (ruling on the Mesa Grande Band's challenge to the Department of the Interior's decision not to change the trust title issued in 1893 to the Santa Ysabel Band in Santa Ysabel Tracts 1 and 2, without mentioning the 1926 Tract). The government argues that title to the 1926 Trust is so inextricably linked to that for the Santa Ysabel Tract 1 that one necessarily follows from the other, and inquiry notice necessarily is triggered as well. *See* Def.'s Mot. at 10-12. The 1926 Act does not, by its terms, however, establish such a binding, mandatory link. Notably, the 1926 statute set aside the 1926 Tract "for the occupancy and use of the Indians of the Mesa Grande Reservation." Act of May 10, 1926, Pub. L. No. 69-209 44 Stat. 496. The clause that follows, "known also as Santa Ysabel Reservation Numbered 1," is a nonessential phrase preceded and followed by a comma and does not necessarily define the recipients of the grant but rather describes where they were located. *See id*. Accordingly, insofar as the statute of limitations is concerned, the text of the 1926 Act does not itself put the Mesa Grande Band on inquiry notice that trust title to the 1926 Tract would follow that to Santa Ysabel Tract 1.

In short, based on an objective assessment of pertinent events, and the logical inferences to be drawn from those events, the Mesa Grande Band would not reasonably have known or have been put on inquiry notice that it had lost its claim of trust title to the 1926 Tract more than six years before it filed suit. Therefore, the Mesa Grande Band's complaint is not time-barred.

## B. *Failure to State a Claim*

The government next argues that the Mesa Grande Band cannot state a claim for a Fifth Amendment taking or a breach of fiduciary duty because it does not possess a valid property interest. *See* Def.'s Mot. at 12; *see also* RCFC 12(b)(6). Specifically, the government avers that the Mesa Grande Band is not, and never has been, the beneficial interest holder of the 1926 Tract based on the phrasing of the 1926 Act. Def.'s Mot. at 12-13 ("[E]ven assuming that a beneficial interest in the 1926 [Tract] vested with the enactment of the statute (rather than with [the Department of the Interior's] issuance of the trust patent), the interest vested in whomever was the beneficial interest holder for Santa Ysabel Tract One."). In the government's view, asserting a property interest in the 1926 Tract would therefore require litigation of the ownership of Santa Ysabel Tract 1, which is barred by issue preclusion. *Id.* at 14.[7]

_____

[7]In its motion, the government raises arguments implicating both the doctrine of issue preclusion and the Quiet Title Act. However, because the Mesa Grande Band does not dispute

11

The government's arguments with regard to the Mesa Grande Band's property interest in the 1926 Tract necessarily reach the merits of the Band's claims.  It is evident that a genuine dispute remains regarding the proper party upon which Congress through the promulgation of the 1926 Act intended to bestow a beneficial interest in the 1926 Tract.  *See generally* Hr'g Tr. 40:1 to 44:20, 54:17 to 55:19.  For a variety of reasons, the court finds that the Mesa Grande Band has plausibly alleged that the government erred in issuing a patent to the 1926 Tract to the Santa Ysabel Band.  First, the Band has demonstrated that the language of the 1926 Act is ambiguous, in that it references both Bands, withdrawing the 1926 Tract for the "Indians of the Mesa Grande Reservation, also known as Santa Ysabel Reservation Numbered 1."  Act of May 10, 1926, Pub. L. No. 69-209, 44 Stat. 496; *see also* Pl.'s Opp'n Ex. 14 (Letter from William E. Finale, Area Director, to the Riverside Field Office Realty Officer (Mar. 24, 1971)) ("We agree that the language of the act is confusing . . . .").  Second, the Band has demonstrated that correspondence exchanged among relevant officials throughout the late nineteenth and early twentieth centuries indicated confusion regarding the land occupied by each Band, especially because Santa Ysabel

---

the current trust title to either Santa Ysabel Tract 1 or the 1926 Tract, the court need not address those arguments.  *See* Hr'g Tr. 22:7-11 ("[W]e [, *i.e.*, the government,] made [the argument regarding the Quiet Title Act] in our opening brief because we assumed that the band was going to say that they had an interest in [Santa Ysabel] Tract 1.  In their response brief, they said, we're not alleging that.").

    The Mesa Grande Band claims ownership of the 1926 Tract up to the time of the government's issuance of a patent to the Santa Ysabel Band in 1980.  And, despite the shared history of the parcels of land, the Mesa Grande Band's interest in Santa Ysabel Tracts 1 and 2 and its interest in the 1926 Tract are distinctly different, resting on separate withdrawals from the public domain and separate statutes.  The rightful ownership of the 1926 Tract has never been litigated and therefore the Mesa Grande Band's claims are not barred by issue preclusion.  *See Restatement (Second) of Judgments* § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").  In addition, the Quiet Title Act does not preclude the court from making a determination regarding the Mesa Grande Band's interest in the 1926 Tract.  *See, e.g.*, *Dwen v. United States*, 62 Fed. Cl. 76 (2004):

> After the passage of the [Quiet Title Act, 28 U.S.C. § 2409a], the government frequently argued that the [C]ourt [of Federal Claims] was divested of jurisdiction to adjudicate takings claims where resolution of a title dispute was subsumed in the determination.  That argument, however, has been firmly laid to rest.  It is now well-established the court has jurisdiction to make independent factual determinations of a claimant's specific property interest as a matter of course in adjudicating takings claims.

62 Fed. Cl. at 81 (citations omitted); *see also Katzin*, 120 Fed. Cl. at 208 n.14 (same).  That the Quiet Title Act contains an exception providing that it "does not apply to trust or restricted Indian lands," 28 U.S.C. § 2409a(a); *see also Mesa Grande Band*, 657 F. Supp. 2d at 1175, does not alter this analysis.

Tract 1 was locally identified as the "Mesa Grande Reservation" and the Mesa Grande Band members were the primary occupants that parcel. *See, e.g.*, Pl.'s Opp'n Ex. 11 (H. R. Rep. No. 2503, at 859 (1952)) ("An act of May 10, 1926, provided that lands set apart were to become a part of [the Mesa Grande Reservation].  This same act stated that Mesa Grande Reservation was Santa Ysabel Reservation No. 1."); *id*. Ex. 12 (Mem. from Leonard Ware to Chief of Branch of Tribal Programs (May 3, 1960)) at 1 ("Today Santa Ysabel [Tracts] No.1 and No. 2 make up the present Mesa Grande Reservation."); *id*. Ex. 13 (Letter from Acting Area Field Representative Frank L. Haggerty, Jr. to Area Realty Officer (Mar. 10, 1971)) ("We are seeking clarification as to which reservation [the 1926 Tract] should be carried.").[8]  Finally, at least some officials familiar with the circumstances of both bands recommended that the land be patented to the Mesa Grande people.  *See, e.g.*, Pl.'s Opp'n Ex. 1 (Letter from Ellis to Commissioner of Indian Affairs (June 1, 1925)) (requesting that the Commissioner of Indian Affairs set aside the parcel "for use of the Mesa Grand[e] Indians").  In sum, the Mesa Grande Band has "'plausibly suggest[ed]' . . . a showing of entitlement to relief," *Cary*, 552 F.3d at 1376 (quoting *Twombly*, 550 U.S. at 557), and dismissal is not appropriate under RCFC 12(b)(6).

## C.  *Joinder of a Necessary Party*

Finally, the government argues that dismissal is required because the Santa Ysabel Band is a necessary and indispensable party that cannot be joined due to sovereign immunity based on its status as a federally-recognized Indian Tribe. Def.'s Mot. at 17-21.  In particular, the government asserts that "a ruling favorable to the Mesa Grande Band . . . necessarily requires a determination that Santa Ysabel Tract One was not properly patented to [the] Santa Ysabel [Band]," which would threaten the Santa Ysabel Band's ability to protect its property interest in that parcel. *Id*. at 18.

In support of this argument, the government relies heavily on *Rosales*, 89 Fed. Cl. 565, in which individual Indian plaintiffs challenged the validity of a tribal election held by the Jamul Indian Village as being procedurally defective and claimed beneficial ownership over two parcels of land in San Diego County, California held by the Jamul Indian Village. *Id*.  In that case, the plaintiffs alleged a breach of trust by the government. *See id*. at 573, 587.  In rejecting their claim for failure to join a necessary party, the court observed that because their claims rested upon the "foundational assumption" that they were the beneficial owners of the parcels, *id*. at 581, "[a]djudicating plaintiffs' claims would require determining the threshold question of

---

[8]The government acknowledges that the relevant documents highlight confusion about the proper ownership of the various lands.  *See* Hr'g Tr. 63:2-10 ("[The documents are] all inconsistent, [there are] four or five of them and . . . they're inconsistent about what they're assigning to which tribe, and I think that's consistent with the idea that during that time period, [in the 1950s and 1960s], it was up in the air a little bit or confusing about who actually owned [Santa Ysabel] Tract 1, that's because the Mesa Grande Band was living on that tract, but it had been patented to [the Santa Ysabel Band]."); *see also* Def.'s Reply at 6 ("Given the statutory link to Santa Ysabel Tract One, the [Mesa Grande] Band–and perhaps even [Department of the] Interior staff–may have initially been confused as to the de facto beneficial interest holder for the 1926 Parcel.").

plaintiffs' beneficial ownership of [the parcels] and thus necessarily implicate[] the [Jamul Indian Village's] ownership interest," *id.* at 585.

This case differs from *Rosales* because the Mesa Grande Band acknowledges that the Santa Ysabel Band is the current beneficial owner of the 1926 Tract, and the Mesa Grande Band is not seeking to obtain a ruling from this court revising the trust title. *See* Pl.'s Opp'n at 30. Rather than challenging the validity of the patent issued by the government in 1980, the Band is seeking compensation for either a taking of their property rights or a breach of fiduciary duty. *Id.* Nonetheless, the government argues that the "fact that the Mesa Grande Band does not explicitly seek to quiet title in the 1926 or 1893 [Tracts] does not change" its position that the Santa Ysabel Band is a necessary party. Def.'s Mot. at 18. This contention reaches too far, however. The difference between a takings claim against the government and a quiet-title action against another party is significant. For a party to be "necessary," RCFC 19(a)(1) requires that the party "claim[] an interest relating to the subject of the action" such that "disposing of the action in the [party's] absence may . . . impair or impede the [party's] ability to protect the interest." RCFC 19(a)(1).

In *United Keetoowah Band*, the Federal Circuit addressed what qualified as an "interest" under RCFC 19(a). *See* 480 F.3d 1318.[9] In that case, the United Keetoowah Band of Cherokee Indians of Oklahoma brought suit requesting compensation for the government's enactment of the Cherokee, Choctaw and Chikasaw Nations Claims Settlement Act, which extinguished all tribal title in a set of lands held in trust by the federal government and created a settlement fund to be dispersed among the three named Nations. *See id.* at 1319. The Cherokee Nation of Oklahoma moved to intervene to dismiss the United Keetoowah Band's suit on the grounds that the Nation was a necessary party because it claimed to be the titleholder of the lands at issue. *Id.* at 1323. The trial court dismissed the action under RCFC 19. *United Keetoowah Band of Cherokee Indians of Okla. v. United States*, 67 Fed. Cl. 695 (2005). The Federal Circuit reversed. In doing so, the court defined the "interest" requirement of RCFC 19(a) in the following terms:

> We hold that our application of the "interest" requirement under RCFC 24(a) applies similarly to RCFC 19(a)(2). Thus, an absent party that claims it is "necessary" under RCFC 19(a)(2) to adjudicate an action must show that its "interest" in the subject matter of the underlying action is not "indirect or contingent" but is "of such a direct and immediate character that the [absent party] will either gain or lose by the direct legal operation and effect of the judgment."

480 F.3d at 1324-25 (citing *American Maritime Transp., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989) (interpreting RCFC 24(a))); *see also United States v. American Tel. & Tel.*

---

[9]RCFC 19 was amended in 2008 to conform with Fed. R. Civ. P. 19. *See* RCFC 19 Rules Committee Notes (2008 amendment). The provision of the rule cited by the Federal Circuit in *United Keetoowah Band* as RCFC 19(a)(2), *see* 480 F.3d at 1324, is now RCFC 19(a)(1)(B).

*Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980).[10]  In refusing to require joinder of the Cherokee Nation of Oklahoma, the court reasoned that the Nation's interest was not "legally protectable" because it would not "gain or lose" title to the lands it alleged it owned if the United Keetowah Band prevailed and was awarded money damages under the Settlement Act.  480 F.3d at 1327.

In this instance, the Santa Ysabel Band's interests similarly are not "legally protectable" because a judgment for the Mesa Grande Band will have no direct effect on the Santa Ysabel Band's beneficial trust status with regard to either Santa Ysabel Tract 1 or the 1926 Tract.  *Cf. United Keetoowah Band*, 480 F.3d at 1325.  Indeed, as the Mesa Grande Band observes, "[a]ny judgment in [the Mesa Grande Band's] favor would necessarily recognize Santa Ysabel as the beneficial owner of the 1926 Tract," Pl.'s Opp'n at 32, and accordingly any potential influence on Santa Ysabel's interests would be "indirect or contingent," *American Maritime*, 870 F.2d at 1561.  Therefore, the Santa Ysabel Band is not a necessary party to this action.

## CONCLUSION

For the reasons stated, the government's motion to dismiss the complaint pursuant to RCFC 12(b)(1), RCFC 12(b)(6), or RCFC 19, is DENIED.  The government shall file its answer to the Mesa Grande Band's complaint on or before June 12, 2015.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

[10]As the Federal Circuit observed, the holding in *United Keetoowah Band* is consistent with the approach taken by other courts.  *See* 480 F.3d at 1325 (citing *Davis v. United States*, 192 F.3d 951, 959 (10th Cir. 1999); *In re Torcise,* 116 F.3d 860 (11th Cir. 1997); *Ramah Navajo Sch. Bd. v. Babbitt*, 87 F.3d 1338, 1351 (D.C. Cir. 1996); *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1347 (6th Cir.1993); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990); *McLaughlin v. International Ass'n of Machinists,* 847 F.2d 620, 621 (9th Cir. 1988); *Shell Dev. Co. v. Universal Oil Prods. Co.*, 157 F.2d 421, 424 (3d Cir. 1946); *Samuel Goldwyn, Inc. v. United Artists Corp.*, 113 F.2d 703, 707 (3d Cir. 1940)).